UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C., and NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C.,<br><br>          Plaintiffs,<br><br>     -v-<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>          Defendant. | 23-cv-8521 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

On October 27, 2023, defendant moved to dismiss the Amended Complaint ("AC"). Def. Notice of Mot. to Dismiss Am. Compl., ECF No. 20. After full consideration of the parties' written submissions and oral argument, the Court hereby grants defendant's motion to dismiss with prejudice and directs the entry of final judgment.

I.   **Plaintiffs' Allegations**

Plaintiffs, Rowe Plastic Surgery of New Jersey LLC ("RPSNJ") and Norman Maurice Rowe, M.D., M.H.A., L.L.C. ("Rowe LLC"), are medical service providers. AC, ¶ 12, ECF No. 13. Dr. Norman Rowe, M.D., provides medical services through RPSNJ, and Dr. Lisa Schneider, M.D., provides medical services through Rowe LLC. Id. ¶¶ 6-7, 9-10. ELS, plaintiffs' patient, "was a candidate for

1

reduction mammaplasty," colloquially known as breast reduction surgery. Id. ¶¶ 13-14. Defendant, Aetna Life Insurance Company, was ELS's insurer. Id. ¶¶ 7 n.1, 15, 18. Plaintiffs were out-of-network providers under ELS's insurance plan. See id. ¶ 16.

On or around October 13, 2020, plaintiffs' employee called Aetna to "obtain[] insurance payment and coverage information" for ELS. Id. ¶¶ 19-20. Iris M., the Aetna employee who answered the phone, "was able to access Aetna's records to provide information concerning ELS's coverage, ELS['s] deductible limits and out-of-pocket limits and whether or not those limits had [been] met." Id. ¶ 20. Iris M. allegedly told plaintiffs' employee that Aetna "would reimburse the services rendered to ELS based upon 80% Reasonable and Customary." Id. Plaintiffs allege that they understood this to mean that defendant would reimburse them for 80% of the cost charged by other similar medical providers, within the same geographic area or market as plaintiffs, to perform a reduction mammaplasty. Id. ¶¶ 26, 28-35.

On November 2, 2020, ELS's breast reduction surgery was approved, after plaintiffs "submitted medical records to Aetna for out-of-network review." Id. ¶¶ 23-24. On November 24, 2020, Dr. Rowe and Dr. Schneider performed the breast reduction surgery on ELS. Id. ¶¶ 7, 10, 36. Plaintiffs allege that this constituted acceptance of Aetna's over the phone "offer" to reimburse them 80% of the reasonable and customary cost of the procedure. Id. ¶ 36.

However, when plaintiffs submitted a bill for $300,000 to Aetna for Dr. Rowe and Dr. Schneider's services (split evenly between the two providers), Aetna only paid $68,130.96 to plaintiff RPSNJ and $9,436.98 to plaintiff Rowe LLC. Id. ¶¶ 38, 40, 42. Plaintiffs allege that this was an underpayment under a reimbursement rate of 80% reasonable and customary. Id. ¶¶ 45, 57-61.

Plaintiffs sued defendant and asserted four causes of action: (1) breach of contract, (2) unjust enrichment, (3) promissory estoppel, and (4) fraudulent inducement. Id. ¶¶ 62-86. Plaintiffs are seeking $147,432.06 in compensatory damages as well as punitive damages and prejudgment interest. Defendant moved to dismiss the AC with prejudice.

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[1] A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). If the plaintiffs have "not nudged their claims

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. The Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

Additionally, the fraudulent inducement claim here asserted is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Accordingly, to be adequately pled, the fraudulent inducement claim must "(1) specify the statements that the plaintiff[s] contend[] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lankau v. Luxoft Holding, Inc., 266 F. Supp. 3d 666, 675 (S.D.N.Y. 2017).

## III. Discussion

The Court will first address which of the evidentiary materials that defendant has submitted in its motion to dismiss are properly considered on a motion to dismiss. Then, the Court will assess whether the claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") or are otherwise legally deficient. For the reasons discussed below, the Court finds that, although it cannot reach the ERISA preemption issue on the

motion to dismiss, all of plaintiffs' claims are legally deficient and must be dismissed.

### a. Evidentiary Materials

In support of its motion to dismiss, defendant submitted the summary description for ELS's insurance plan, a transcript of the October 2020 call between plaintiffs' employee and defendant's employee, Iris M., and the November 2, 2020 pre-authorization letter approving ELS's surgery. See Petrozelli Decl., Ex. A, ECF No. 22-1; Petrozelli Decl., Ex. B, ECF No. 22-2; Petitt Decl., Ex. A, ECF No. 21-1. Plaintiffs argue that none of the documents is properly before the Court on the motion to dismiss.

A complaint is deemed to contain a document if any one of three conditions is satisfied. First, the complaint may attach the document or incorporate it by reference. Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Second, the complaint may "rel[y] . . . upon its terms and effect" to such an extent that the document is "integral" to the complaint. Id. See also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Third, the document may be subject to judicial notice. See Fed. R. Evid. 201(b) (Judicial notice may be taken of facts that are either "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot be questioned.").

Applying these standards, the Court concludes it may properly consider the transcript of the October 2020 call but not the other documents. The October 2020 call is plainly integral to the AC, as the AC relies upon the "terms and effect" of the phone call as the basis for the entire lawsuit. See AC, ¶¶ 27, 43, 57-61, 71, 74-80, 82-86; Int'l Audiotext Network, 62 F.3d at 72. Plaintiffs do not attempt to dispute that the phone call is integral to the AC or that the transcript is unreliable. Instead, plaintiffs argue that the transcript of the call is inadmissible and cannot be considered because defendant did not lay the proper foundation to invoke the hearsay exception for business records. Even assuming arguendo that the Court may only consider admissible evidence on a motion to dismiss, defendant has fully laid the foundation that the phone call is a business record. A declaration from a senior paralegal of defendant indicates the phone call "was recorded and maintained in the normal course of Aetna's business." Petrozelli Decl., ¶ 3. That is sufficient foundation. United States v. Komasa, 767 F.3d 151, 156 (2d Cir. 2014) ("To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was kept in the course of a regularly conducted business activity and also that it was the regular

practice of that business activity to make the record.").[2]
Accordingly, the Court will consider the transcript of the phone
call when assessing the sufficiency of the AC.

However, the Court will not consider the November 2020 pre-
authorization letter. The pre-authorization letter is not attached
to the complaint nor is the pre-authorization letter subject to
judicial notice. That leaves two other possible options: that the
letter is incorporated by reference, or it is integral to the
complaint. "To be incorporated by reference, the Complaint must
make a clear, definite and substantial reference to the
document[]." Lateral Recovery, LLC v. Cap. Merch. Servs., LLC, 632
F. Supp. 3d 402, 440 (S.D.N.Y. 2022). But the AC only references
the pre-authorization letter once, see AC, ¶ 24, which is
insufficient for incorporation by reference, see Lateral Recovery,
632 F. Supp. 3d at 440. Nor can it be said that the letter is
integral to the AC, as the AC does not "rel[y] . . . upon its terms
and effect" for any of the causes of action that are asserted
against defendant. See Int'l Audiotext Network, Inc., 62 F.3d at
72. Thus, the letter is not properly considered on the motion to
dismiss.

---

[2] Furthermore, the statements of plaintiffs' employee, contained
in the document, are admissible under Federal Rule of Evidence
801(d)(2)(D).

Finally, the Court will not consider the summary of ELS's insurance plan. Neither party argues that the Court can take judicial notice of the plan, that the plan is attached to the complaint, or that the plan is incorporated by reference. The parties do, however, dispute whether the plan is integral to the AC. Defendant argues that the plan is integral to the AC because "E.L.S. was enrolled in the [p]lan" and "Aetna's communications to [p]laintiffs about the [p]lan terms, specifically the October 14, 2020 benefits verification call, and, indeed, the [p]lan's terms themselves are at the very heart of [p]laintiffs' claims." Def. Reply Mem. of Law in Further Supp. of Mot. to Dismiss, at 7, ECF No. 27. Plaintiffs, on the other hand, argue that they did not "rel[y] on the terms and effect of [the plan] in drafting [their] complaint," Chambers, 282 F.3d at 153, because they are seeking to enforce an oral promise that is not a term in the plan and the AC would state a claim to relief without any references to ELS's plan.

Plaintiffs have the better of the arguments, as defendant's position is based on an over-reading of the AC. The AC does not once mention ELS's insurance plan or quote from it. Instead, the AC only contains oblique references to ELS's insurance plan. In particular, the AC alleges that "ELS are the initials of a consumer of Aetna's health insurance products," and around October 13, 2020, plaintiffs' employee "contacted Aetna" to "obtain[] insurance payment and coverage information." AC, ¶¶ 7 n.1, 19. Defendant's

employee, Iris M., then allegedly indicated that he "was able to access Aetna's records to provide information concerning ELS'[s] coverage, ELS['s] deductible limits and out-of-pocket limits and whether or not those limits had been met" and "represented that [Aetna] would reimburse the services rendered to ELS based upon 80% Reasonable and Customary." Id. ¶ 20. Despite defendant's best efforts, the allegations in the AC do not allege that the representation about the reimbursement rate was based on the plan, nor does the AC anywhere allege that ELS was part of an ERISA plan that Aetna administers. If "[m]erely mentioning a document in the complaint" or "offering limited quotations from [a] document is not enough" for a document to be integral to a complaint, Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016), then surely the allegations in the AC, which do not even reference or quote from the plan, are insufficient to show that plaintiffs "reli[ed] on the terms and effect of [the summary of ELS's plan] in drafting [their] complaint." Chambers, 282 F.3d at 153. This is especially so because the entire thrust of the AC is based on the alleged oral representation that plaintiffs would be reimbursed at 80% reasonable and customary. See AC, ¶¶ 27, 43, 57-61, 71, 74-80, 82-86. The Court thus will not consider the summary of the plan on a motion to dismiss.

### b. ERISA Preemption

Under Section 514(a) of ERISA, "any and all State laws insofar as they may now or hereafter relate to any employment benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title" are preempted. 29 U.S.C. § 1144(a). Defendant argues that all of plaintiffs' claims are preempted by ERISA. Accordingly, if it is clear from the AC and the transcript of the call that ELS had an insurance plan governed by ERISA, then the Court would be required to undertake a preemption analysis. However, the AC does not once mention ERISA or that ELS had an insurance plan governed by ERISA. Nor does the transcript of the October 14, 2020 call indicate that ELS had a plan governed by ERISA. See Petitt Decl., Ex. A. Only the summary of ELS's plan, which the Court cannot consider, indicates that ELS's plan is governed by ERISA. See Petrozelli Decl., Ex. A, at 112-14, 120. Because there is no proper evidence before the Court that ELS's plan is governed by ERISA, it would be premature for the Court to engage in a preemption analysis.

### c. Legal Adequacy

ERISA quite aside, defendant argues that all of plaintiffs' claims are legally defective and should be dismissed. The Court agrees.

### i. Breach of Contract

"To state a claim in federal court for breach of contract under New York law, a complaint need[s] [to] allege (1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of contract by the defendant, and (4) damages." DeFlora Lake Dev. Assocs., Inc. v. Park, 654 F. App'x 9, 10 (2d Cir. 2016). "An agreement generally requires an offer and an acceptance." McCabe v. ConAgra Foods, Inc., 681 F. App'x 82, 84 (2d Cir. 2017). See also Ellig v. Molina, 996 F. Supp. 2d 236, 242 (S.D.N.Y. 2014) ("In order to establish the existence of a contract, a party must demonstrate that there was an offer and acceptance, in exchange for value -- or consideration."). "[A] breach of contract claim that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal." Lamda Sols. Corp. v. HSBC Bank, USA, N.A., 574 F. Supp. 3d 205, 213 (S.D.N.Y. 2021).

Plaintiffs' breach of contract claim centers on the statement that defendant's employee made on the October 14, 2020 call. See AC, ¶¶ 20, 59. Plaintiffs allege that this was a unilateral offer of 80% reimbursement that plaintiffs accepted by performing the surgery on ELS. Id. ¶¶ 27, 36. Defendant, however, argues that the transcript of the call demonstrates that Aetna's employee did not make an offer to pay 80% reasonable and customary but instead was merely explaining the reimbursement methodology under ELS's plan.

Because, as previously noted, the transcript of the call is properly considered on the motion to dismiss, the Court is not bound by the plaintiffs' allegation that the representation was a unilateral offer. Instead, the transcript of the October 14, 2020, phone call "control[s]." Tongue v. Sanofi, 816 F.3d 199, 206 n.6 (2d Cir. 2016). See also Midwest Operating Eng'rs Pension Tr. Fund v. Alkermes Pub. Ltd. Co., No. 21-801-cv, 2021 WL 5782079, at *3 n.7 (2d Cir. Dec. 7, 2021). Accordingly, the Court will review the transcript of the call to determine whether the representation that plaintiffs allege was a unilateral offer is legally characterized as such.

"An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Lamda Sols. Corp., 574 F. Supp. 3d at 214 (quoting Restatement (Second) of Contracts § 24 (1981)). "[T]o make an offer[,] [a]ll that is required is conduct that would lead a reasonable person in the other party's position to infer a promise in return for performance." Einhorn v. Mergatroyd Prods., 426 F. Supp. 2d 189, 193 (S.D.N.Y. 2006). The parties' subjective intent is irrelevant. See Leonard v. Pepsico, Inc., 88 F. Supp. 2d 116, 127 (S.D.N.Y. 1999), aff'd, 210 F.3d 88 (2d Cir. 2000); Rightnour v. Tiffany & Co., 239 F. Supp. 3d 744, 752 (S.D.N.Y. 2017).

Here, the transcript of the October 14, 2020 call clearly shows that defendant's employee did not make an offer. At the start of the call, plaintiffs' employee states that she "would like the benefits" for ELS "for outpatient surgery done in a hospital and billing as professional." Petitt Decl., Ex. A, at 2:16-18. Defendant's employee then goes on to recount, in detail, ELS's plan benefits: (1) "the outpatient surgery center for ambulatory" would "be covered at 100 percent" without a deductible or copay; (2) ELS's "out-of-pocket for in-network" is "4500" (only $170.69 of which had been met); (3) "out-of-network coinsurance" is "70 percent" after ELS's $3,000 deductible; and (4) ELS's "out-of-pocket for out-of-network" is $6,000 (only $178.69 of which had been met). Id. at 3:11-4:25. Only after receiving all of that information did plaintiffs' employee ask "what is the reimbursement rate? Reasonable on customary or Medicare?"; defendant's employee checked and then responded, "for the reimbursement rate, it's going to be 80 percent reasonable and customary." Id. at 5:1-9. It is thus plain from the transcript of the call that defendant's employee was merely recounting ELS's scope of coverage and benefit rates. No reasonable person would understand that representation to be an offer or promise to pay a particular amount to plaintiffs. See TML Recovery, LLC v. Humana, Inc., No. 18-cv-00462, 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019) ("within the medical insurance industry, an insurer's

verification is not the same as a promise to pay"). Nor can allegations related to plaintiffs' subjective understanding that this representation was a unilateral offer change the analysis, as subjective intent is completely irrelevant. See Leonard, 88 F. Supp. 2d at 127; Rightnour, 239 F. Supp. 3d at 752.[3]

Because no reasonable person would understand the representation about the reimbursement rate to be an offer to pay and the AC does not allege any other offer as the basis for its breach of contract claim, the breach of contract claim must be dismissed.

### ii. Promissory Estoppel

To adequately plead a promissory estoppel claim, the complaint "must allege 'a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the

---

[3] Plaintiffs submitted a declaration from Michael Manzo, presumably to bolster and supplement the allegations made in the AC. See Manzo Decl., ECF No. 25. The Court will not consider this declaration or its additional factual allegations because it would be improper to do so. See Maricultura Del Norte v. World Bus. Cap., Inc., 159 F. Supp. 3d 368, 376 (S.D.N.Y. 2015) ("The contents of such documents may not be considered in ruling on the instant motion, as a plaintiff may not supplement a deficient pleading through additional facts contained in affidavits."), aff'd sub nom. Maricultura Del Norte, S. de R.L. de C.V. v. Umami Sustainable Seafood, Inc., 769 F. App'x 44 (2d Cir. 2019); Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A., 650 F. Supp. 3d 62, 86 (S.D.N.Y. 2023) ("It is well established in this district that a plaintiff cannot amend his pleadings in his opposition briefs.").

promise is made; and an injury sustained by the plaintiff[s].'"
Cambridge Cap. LLC v. Ruby Has LLC, 565 F. Supp. 3d 420, 457
(S.D.N.Y. 2021) (quoting Cyberchron Corp. v. Calldata Sys. Dev.,
Inc., 47 F.3d 39, 44 (2d Cir. 2015)). "A promise that is too vague
or too indefinite is not actionable under a theory of promissory
estoppel." Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC,
No. 22-cv-9766, 2023 WL 4211035, at *12 (S.D.N.Y. June 27, 2023).

Plaintiffs' promissory estoppel claim relies on the same
representation as the breach of contract claim: that "Aetna made
a clear and definite promise to reimburse the medical services
provided by [plaintiffs] to ELS at 80% Reasonable and Customary."
AC, ¶ 74. As explained above, the Court is not bound by these
allegations, as the transcript of the actual phone call is properly
considered on the motion to dismiss. See Tongue, 816 F.3d at 206
n.6. The full statement that defendant's employee made is: "So for
the reimbursement rate, it's going to be 80 percent reasonable and
customary." Petitt Decl., Ex. A at 5:6-7. There is no language
indicating that defendant's employee undertook an obligation or
promised to pay a particular amount. Instead, context makes plain
that defendant's employee was merely reciting the benefits
available if plaintiffs performed the breast reduction surgery on
ELS, not promising to pay plaintiffs a particular amount if the
surgery was in fact performed. See TML Recovery, 2019 WL 3208807,

at *4. Accordingly, the promissory estoppel claim must be dismissed because defendant did not make a clear and unambiguous promise.

### iii. Unjust Enrichment

"To state a claim for unjust enrichment under New York law, a plaintiff must plead facts showing that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Mount v. PulsePoint, Inc., 684 F. App'x 32, 36 (2d Cir. 2017). Plaintiffs' theory undergirding this claim is that defendant was able to earn a higher profit, because defendant underpaid plaintiff, and it would be unjust for defendant to retain those ill-gotten profits. See AC, ¶¶ 67-68. Defendant argues that the AC fails to adequately allege an unjust enrichment claim. The Court once again agrees with defendant.

To prevail on an unjust enrichment claim, "a party must establish that it conferred a benefit upon the other party, and that the party will retain that benefit without adequately compensating the first party therefor." Nasca v. Greene, 187 N.Y.S.3d 773, 775 (2d Dep't 2023). See also Nakamura v. Fujii, 677 N.Y.S.2d 113, 116 (1st Dep't 1998) ("To state a cause of action for unjust enrichment, a plaintiff must allege that it conferred a benefit upon the defendant, and that the defendant will obtain such benefit without adequately compensating plaintiff

therefor."); M+J Savitt, Inc. v. Savitt, No. 08 Civ. 8535, 2009 WL 691278, at *10 (S.D.N.Y. Mar. 17, 2009) ("To bring [an unjust enrichment] claim, the plaintiff must have bestowed the benefit on the defendant."). Here, the only benefit allegedly conferred on defendant is the surgery plaintiffs performed on ELS. See AC, ¶ 70 ("The benefit conferred upon Aetna was the benefit of its bargain, bilateral breast reduction and other medical services rendered to ELS."). But that is not a benefit that inured to defendant. See Travelers Indem. Co. of Conn. v. Losco Grp., Inc., 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) ("It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured -- which hardly can be called a benefit."). That is solely a benefit conferred on the patient, which is legally insufficient to allege an unjust enrichment claim.

Relatedly, the unjust enrichment claim is also deficient because there is no allegation a service was provided to defendant at defendant's request, as is required under New York law. See, e.g., Katselnik & Katselnik, Inc. v. Silverman, No. 111147/2008, 2009 WL 3713145 (N.Y. Sup. Ct. Oct. 13, 2009) ("[T]o prevail on . . . an unjust enrichment claim . . . [p]laintiff would also have to establish that the services were performed for the defendant. . . . if services were performed at the behest of someone other

than the defendant, the plaintiff must look to that person for recovery."); Kagan v. K-Tel Ent., Inc., 172 A.D.2d 375, 376 (1st Dep't 1991) ("to recover under a theory of quasi contract, a plaintiff must demonstrate that services were performed *for the defendant* resulting in its unjust enrichment"); Josephson v. United Healthcare Corp., No. 11-CV-3665, 2012 WL 4511365, at *5 (E.D.N.Y. Sept. 28, 2012) (dismissing a medical providers' unjust enrichment claim against an insurer because the medical "services were performed at the behest of [the medical providers'] patients, not United.").[4] There is no allegation that a service was performed at defendant's request, as the only benefit alleged to have been

---

[4] Plaintiffs attempt to counter that this requirement applies only to quantum meruit claims. That completely ignores that the cited cases apply this requirement to unjust enrichment claims. It also overlooks the well-established principle that "[a]lthough their elements are articulated somewhat differently, New York law permits analyzing quantum meruit and unjust enrichment together as a single quasi contract claim." Nwoye v. Obama, 22-CV-1791, 2023 WL 4631712, at *11 (S.D.N.Y. July 20, 2023). See also Unicorn Crowdfunding, Inc. v. New St. Enter., Inc., 507 F. Supp. 3d 547, 575-76 (S.D.N.Y. 2020); Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005). It is thus a distinction without a difference.

conferred on defendant is the surgery performed on ELS that was not alleged to have been at defendant's request. See AC, ¶ 70.

For each and both these reasons, the unjust enrichment claim must be dismissed.

### iv. Fraudulent Inducement

To make out a claim for fraudulent inducement, "plaintiff[s] must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff[s] reasonably relied; and (5) which caused injury to plaintiff[s]." President Container Grp. II, LLC v. Systec Corp., 467 F. Supp. 3d 158, 165 (S.D.N.Y. 2020) (quoting Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001)). Here, defendant argues that the fraudulent inducement claim must be dismissed because it is inadequately pled under Federal Rule of Civil Procedure 9(b). The Court agrees.

Because plaintiffs' fraudulent inducement claim is subject to Federal Rule of Civil Procedure 9(b), the AC must include allegations that "explain why the statement[] w[as] fraudulent." Lankau, 266 F. Supp. 3d at 675. Here, plaintiffs' complaint entirely fails to do so. The central allegation is that defendant "intentionally misrepresented . . . that its reimbursement was based on 80% Reasonable and Customary." AC, ¶ 82. The only

allegation in the AC about why this was statement was fraudulent is that defendant "knew its claims processing system did not allow for payment using 80% Reasonable and Customary." Id. ¶ 83. However, that allegation, in and of itself, does not adequately allege why the statement was fraudulent. Whether a processing system permits a certain amount of reimbursement does not indicate that defendant could not and would not pay the represented reimbursement amount. The allegations are therefore insufficient under Federal Civil Rule 9(b). The fraudulent inducement claim must therefore be dismissed.

### d. Leave to Amend

Defendant requests that the Court dismiss the AC with prejudice. Plaintiffs, for their part, have not sought leave to amend nor indicated how any amendment could fix the deficiencies with the AC, most of which are legal deficiencies that no conceivable amendment could fix. Because plaintiffs have already amended their complaint once, have not sought leave to amend their complaint again, and have not explained how any of the glaring legal deficiencies with their complaint can be fixed, the Court

will dismiss the AC with prejudice. <u>See</u> <u>Shields v. Citytrust</u> <u>Bancorp, Inc.</u>, 25 F.3d 1124, 1132 (2d Cir. 1994).

## IV.  **Conclusion**

For the reasons explained above, the Court hereby dismisses the AC with prejudice. The Clerk of Court is directed to enter judgment, dismissing the case with prejudice and in its entirety.

New York, NY
December  11, 2023

JED S. RAKOFF, U.S.D.J.